**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42198**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Opinion No. 58** |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Filed:  September 16, 2015** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JOSE LUIS VILLAVICENCIO,** | ) | |
| | ) | |
| **Defendant-Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County.   Hon. Michael E. Wetherell; Hon. Lynn G. Norton, District Judges.

Amended judgment modifying probation terms, <u>vacated</u>, and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for appellant.  Russell J. Spencer argued.

Sara B. Thomas, State Appellate Public Defender; Aaron J. Currin, Deputy Appellate Public Defender, Boise, for respondent.  Aaron J. Currin argued.

_____

LANSING, Judge Pro Tem

Jose Luis Villavicencio was charged with and convicted of multiple offenses.  He entered into a binding plea agreement requiring ten-year periods of probation.  The court imposed ten-year probation terms but did so in a manner that conflicted with the applicable statutes. Villavicencio filed a motion to cure his illegal sentences, and it was granted.  The court reduced his probation to legal terms, but those sentences were inconsistent with the plea agreement.  The State appeals and argues that the court erred by imposing amended sentences that do not comply with the plea agreement.

## I.

## BACKGROUND

In 2005, the State and Villavicencio entered into a binding plea agreement governing two separate cases. It called for Villavicencio to plead guilty to two charges of possession of

1

methamphetamine, Idaho Code § 37-2732(c)(1). As to the sentences, the parties agreed: (1) that Villavicencio would receive prison sentences of "one and a half (1-1/2) years determinate followed by three and a half (3-1/2) years indeterminate, PER FELONY COUNT, for a total sentence of ten (10) years"; (2) that the court would retain jurisdiction; and (3) that if Villavicencio successfully completed a period of retained jurisdiction he would be placed on probation for "a period of ten years." The district court agreed to be bound by the agreement and, accordingly, imposed consecutive[1] unified five-year sentences with one and one-half-year fixed terms for each possession charge and retained jurisdiction. Villavicencio successfully completed his retained jurisdiction program, and the case proceeded to a review hearing.

In 2006, at the jurisdictional review hearing, the court recited its understanding of the underlying facts and law. The court correctly observed that the maximum sentence for possessing methamphetamine is seven years, and thus the maximum probation period for a violation of that statute is seven years. I.C. § 37-2732(c)(1). The court believed, however, that the prison sentences had been set run *concurrently*, and therefore that the probation periods would also have to be concurrent and could not exceed seven years. Accordingly, the plea agreement's provision that Villavicencio should be sentenced to ten years of probation presented a problem in the district court's perception. The court resolved this problem by holding that concurrent ten-year probation periods were permissible in this case because the parties had agreed to it and because that would have been a permissible aggregate duration of probation if the sentences had been set to run consecutively. On this basis, the district court placed Villavicencio on probation for two concurrent ten-year terms.

In 2013, more than seven years after Villavicencio's probation began, the State initiated probation revocation proceedings, alleging that he had committed new offenses and consumed alcohol in violation of the conditions of probation. In lieu of challenging these allegations

---

[1] Our record does not clearly indicate whether the prison sentences were imposed to run consecutively or concurrently. The judgment clearly states that the sentences are consecutive, but the minutes of the sentencing hearing indicate that the court orally pronounced concurrent sentences. There is no transcript of the sentencing hearing in the record on appeal. It appears that the district court, in 2013, found that the orally imposed sentences were consecutive. In their briefing on appeal, the parties do not acknowledge this ambiguity in the record, and both seem to regard the original sentences as consecutive. Therefore, we address the matter as it was presented to us and assume the sentences were ordered to run consecutively. Because we remand, this question can be addressed below.

directly, Villavicencio filed a motion to correct illegal sentences pursuant to Idaho Criminal Rule 35. He argued that his sentences were illegal because ten-year probation terms exceeded the seven-year maximum statutorily authorized for his offenses. Therefore, he contended, his probation terms must be reduced to seven years, with the result that his probation ended before the alleged violations occurred.

The State objected to Villavicencio's motion. It pointed out that Villavicencio had agreed to an aggregate ten-year probation term in the plea agreement and had not objected at the jurisdictional review hearing when the concurrent ten-year terms were imposed. On this basis, it argued that the use of the word "concurrent" to describe the probation terms was in error and could be corrected, that Villavicencio had waived his right to complain about his sentence, and that any error in the sentence was "invited" by Villavicencio.

The district court rejected the State's arguments and granted Villavicencio's Rule 35 motion. It concluded that the probation terms could not be modified to run consecutively for a total of ten years because, in the court's view, any authority to amend the sentence to conform with the plea agreement would have to derive from I.C.R. 36, which did not authorize such an amendment because the error was not clerical in nature. The court then held that the ten-year probation terms were illegal and entered an amended judgment changing them to seven years. Because those amended probation periods had expired before Villavicencio allegedly committed probation violations, the district court's decision implicitly denied the State's motion to revoke his probation. The State appeals from the amended judgment.

## II.

## ANALYSIS

It is undisputed that the probation terms imposed in 2006 were illegal--Idaho statutes did not permit concurrent ten-year terms of probation because the maximum prison sentence for Villavicencio's offenses was seven years, I.C. § 37-2732(c)(1), and for a felony "the period of probation may be for a period of not more than the maximum period for which the defendant might have been imprisoned." I.C. § 19-2601. The State correctly points out that at the rider review hearing in 2006, the district court could have imposed consecutive terms of probation totaling ten years. *See State v. Horejs*, 143 Idaho 260, 266, 141 P.3d 1129, 1135 (Ct. App. 2006). Doing so would have resulted in sentences that were both compliant with the plea

agreement and within statutory limits. Unfortunately, those were not the terms that were imposed, and no action was taken by either party to correct the sentences for over seven years.

The State argues that the district court erred by failing to implement the plea agreement, which called for consecutive sentences and an aggregate probation period of ten years. Villavicencio responds that the district court had no subject matter jurisdiction to amend his sentences in the manner requested by the State because that jurisdiction expired when the statutorily authorized seven-year probation period ended. According to Villavicencio, the court possessed subject matter jurisdiction only to grant his Rule 35 motion to reduce the probation terms to seven years.

## A.      Subject Matter Jurisdiction

We address first Villavicencio's jurisdictional argument. He contends that, pursuant to *State v. Kesling*, 155 Idaho 673, 315 P.3d 861 (Ct. App. 2013), once he had completed seven years of probation, the district court was divested of jurisdiction to consider revoking the probation. In *Kesling*, the defendant was sentenced to a probation period that exceeded the duration allowed by law. The State initiated revocation proceedings after the lawful portion of the probation had elapsed. The defendant objected that the court was not authorized to revoke a probation that had expired. In that case, we held that the court lacked subject matter jurisdiction to revoke the probation because the legal period of probation had elapsed.

The *Kesling* rule that a court lacks subject matter jurisdiction to revoke an elapsed term of probation derives from the general principle that a court's authority in a criminal case terminates when the judgment becomes final. *See State v. Jakoski*, 139 Idaho 352, 355, 79 P.3d 711, 714 (2003); *Kesling*, 155 Idaho at 676, 315 P.3d at 864. However, various rules and statutes prescribe exceptions to this general principle and grant authority to undertake certain post-judgment actions. For example, Idaho Code sections 19-2602 and 19-2603 authorize the revocation of probation and Rule 35(a) authorizes the court to amend an illegal sentence "at any time." Neither these statutes nor Rule 35(a) specify the order in which the court should adjudicate the issues when, as here, there are pending both a motion to revoke probation and a motion to correct an illegal sentence.

Nor does *Kesling* answer that question. *Kesling* was decided on narrow grounds--we considered only whether a court had jurisdiction to revoke an expired probation. There, it was not contended that the district court could have amended the period of probation in a way that

4

would have rendered it lawful. Rather, it was undisputed that the maximum lawful period of probation had elapsed and that the district court lacked jurisdiction to revoke an elapsed probation. Accordingly, whether the sentence could have or should have been amended to a different, lawful sentence was not before this Court.

In this case, where the question is squarely presented, we hold that a Rule 35(a) motion to amend an illegal sentence may be adjudicated first. Fundamentally, a court must determine whether the defendant is serving a lawful term of probation before deciding whether to revoke it. When a sentence is found to be unlawful, Rule 35 authorizes the court to correct it. If the resulting amendment provides for a term of probation that has already elapsed, then the court will have no jurisdiction to entertain revocation proceedings. But if the court lawfully can, and does, amend the sentence to specify a probation period that has not expired, the court will then have jurisdiction to entertain revocation proceedings. Here, Villavicencio's judgment on its face established ten-year terms of probation, but as structured, those terms were illegal. If that duration of probation could be restructured to make it legal, the court possessed jurisdiction to do so by virtue of I.C.R. 35(a). Villavicencio's contention that he must be treated as if his probation was for two concurrent seven-year terms would require the district court to make a revocation decision based upon a hypothetical judgment--a judgment with seven-year probation terms that *might* exist after the illegal sentences were cured. We reject that procedure because it does not take into account the effect of Rule 35(a). We hold that the court may first address the Rule 35(a) motion by amending the judgment to correct the illegal sentences and then use the amended judgment when addressing the motion to revoke probation.

**B.     Scope of Discretion Upon Correcting an Illegal Sentence**

Having decided that the Rule 35(a) motion to correct Villavicencio's sentences should be decided first, we next address whether, in responding to that motion, the district court was obligated to reduce the probation terms to seven-year concurrent terms, the minimum action required to resolve the illegality, or whether the court could have reformulated the probation to two consecutive five-year periods as requested by the State. It appears that the district court was of the view that Rule 35(a) granted authority only to remedy the illegal portion of the sentence and that broader changes could be made only if such changes were authorized under another rule, such as I.C.R. 36.

5

In examining this issue, we find that Idaho precedent includes two lines of authority which, at least from a superficial view, appear to be conflicting. The first line of authority suggests that, in correcting an illegal sentence, the court has discretion to impose any sentence that could have originally been lawfully imposed. These cases begin with *State v. Lindquist*, 101 Idaho 688, 619 P.2d 1141 (1980). The defendant there was sentenced to a fixed thirty-year sentence for second degree murder pursuant to a statute that had not yet been enacted when the crime was committed. That sentence was illegal because, at the time of Lindquist's offense, the Idaho statutes authorized only indeterminate sentences. *Id.* at 691, 619 P.2d at 1144. Upon determining that the sentence was unlawful, the Idaho Supreme Court remanded for the trial court to resentence the defendant "to any punishment permitted for the offense of second degree murder under the provisions of statutes in effect at the time of the commission of the crime in question here." *Id.* at 689, 619 P.2d at 1142. Although the Supreme Court's opinion did not specifically address whether Lindquist's sentence could be increased on remand, it did not limit the trial judge to imposition of an indeterminate sentence of thirty years or less.

This Court addressed a similar issue in *State v. Hoisington*, 105 Idaho 660, 671 P.2d 1362 (Ct. App. 1983), where the defendant had been sentenced to a fixed eight-year term for rape. As in *Lindquist*, the fixed sentence was illegal because the fixed sentencing statute did not become effective until after the commission of the offense. When the illegality was brought to the trial court's attention, it amended the sentence to an indeterminate term of twenty years. Under the applicable sentencing laws, Hoisington would then be eligible for parole upon service of one-third of the twenty-year sentence but, if not paroled, could remain in prison for the full twenty-year term. On appeal, Hoisington argued that the illegality should have been corrected by simply amending the illegal fixed eight-year sentence to an indeterminate eight-year sentence, which would have made him eligible for parole after less than three years of imprisonment. This Court disagreed. Relying upon *Lindquist*, we held that the new twenty-year indeterminate sentence was lawful because, in correcting an illegal sentence, the trial court was permitted to impose any punishment authorized for the offense under the statutes in effect at the time of the crime's commission. *Hoisington*, 105 Idaho at 662, 671 P.2d at 1364.

The Court of Appeals again addressed the correction of an illegal sentence in *State v. Money*, 109 Idaho 757, 710 P.2d 667 (Ct. App. 1985), where the defendant was sentenced to a twelve-year indeterminate term for second degree murder, together with a consecutive

6

indeterminate two-year period for use of a firearm. Shortly after the sentencing, the trial court sua sponte corrected the sentence by increasing the enhancement period from two years to three years because three years was the minimum required by the enhancement statute, I.C. § 19-2520. On appeal, this Court considered two issues relating to the sentence--whether Money's right to due process was violated because he was not present when his sentence was corrected and whether the trial court erred because it considered only one segment of the sentence, the enhancement, instead of considering the entire sentence when it corrected the illegality. We held that the trial court had erred in both of those ways and remanded for resentencing in a proceeding at which Money would be present and in which the court would reconsider the entire sentence. *Money*, 109 Idaho at 760, 762, 710 P.2d at 670, 672. In the course of its opinion, and referring to *Lindquist* and *Hoisington*, this Court said that when correcting an illegal sentence, "a trial court is not bound by the terms of the original sentence," but, rather, "may resentence to any punishment permitted for the offense under the provisions of the applicable statutes." *Money*, 109 Idaho at 759, 710 P.3d at 669. However, in *Money*, there was no argument that in correcting an illegal sentence a court is prohibited from increasing the sentence more than required to correct the illegality. Therefore, this broad statement in *Money* is dicta.

The most recent opinion in this line of authority is *State v. Edghill*, 155 Idaho 846, 317 P.3d 743 (Ct. App. 2014). There, as part of the defendant's sentence for vehicular manslaughter, the trial court suspended his driver's license for life. However, in response to a motion by Edghill, the court later amended the judgment by adding a proviso that it would consider a petition to allow Edghill to obtain a driver's license after the expiration of ten years from the original judgment. Over a period of years, Edghill brought various motions requesting relief from the lifetime suspension. In response to these, the district court issued a series of successive orders authorizing temporary conditional driving permits that allowed Edghill to drive an all-terrain vehicle. When the last of these expired, Edghill filed a motion to reinstate his driving privileges. At that point, a new district judge had been assigned to the case. The new judge held that the provision allowing Edghill to continually petition for driving privileges was illegal, and therefore struck that portion of the sentence, leaving in place the lifetime suspension of the license. Edghill appealed, arguing that upon determining that part of the license suspension was illegal, the district court should have resentenced him regarding the entire license suspension instead of merely excising the illegal portion that provided an opportunity for reinstatement.

This Court ultimately agreed with Edghill's contention and remanded for the district court to reconsider all parameters of the license suspension, including its length, rather than just deleting the provision that was illegal. In the course of reaching that decision, however, the *Edghill* opinion presents a considerable quantity of dicta, including some that reiterates the statements from *Hoisington* and *Money* indicating that a court which is called upon to correct an illegal sentence "may resentence to any punishment permitted for the offense under the provisions of the applicable statutes." *Edghill*, 155 Idaho at 850, 317 P.3d at 747 (quoting *Money*, 109 Idaho at 759, 710 P.2d at 669).

The foregoing cases state as a general proposition that upon correcting an illegal sentence, the sentencing court's discretion is constrained only by provisions of sentencing law applicable at the time the offense was committed. However, a second line of authority also exists which indicates that there are limits on that discretion. It commenced with *State v. Mendenhall*, 106 Idaho 388, 679 P.2d 665 (Ct. App. 1984). In that case, while the defendant was in jail awaiting sentencing for grand larceny, he escaped. After he was rearrested several years later, he was convicted of escape and ultimately was sentenced for both offenses. The court imposed identical, concurrent five-year sentences for the grand larceny and the escape but thereafter suspended the sentences and placed Mendenhall on probation. After the probation terms were violated, the district court revoked probation but restructured the sentences to require that the escape sentence be served consecutive to the grand larceny sentence because the governing statute required that if a person who was convicted of escape from custody was charged with or convicted of a felony, any sentence of confinement for the escape must be consecutive to the confinement imposed for the underlying felony. *Id.* at 391, 679 P.2d at 668. Mendenhall argued on appeal that the district court exceeded its authority when it increased his punishment by making the previously concurrent sentences consecutive. We held that the district court had not acted properly by simply converting the original concurrent sentences into consecutive terms of equal duration, which effectively doubled Mendenhall's punishment. We noted that it was unnecessary to increase the punishment in order to correct the illegality. Rather, the sentencing court could have brought the sentences into compliance with the statute by adjusting the term of each individual sentence so that, when served consecutively, the two sentences would not cumulate to more than five years. We said, "By making the sentences consecutive without adjusting their terms, the judge went beyond mere correction of the

8

sentences. He imposed a harsher penalty." *Id.* at 394, 679 P.2d at 671.[2] We concluded that the range of corrective sentences was confined to "those which will not increase the aggregate penalty imposed." *Id.* at 395, 679 P.2d at 672.

We followed this precedent in *State v. Steelsmith*, 153 Idaho 577, 288 P.3d 132 (Ct. App. 2012), where the sentencing court imposed a prison sentence but retained jurisdiction for one year pursuant to I.C. § 19-2601(4). At the sentencing hearing, the court indicated that it would defer imposition of costs, fines, and other assessments and would defer deciding on a driver's license suspension until a review hearing could be conducted at the conclusion of the retained jurisdiction. At the jurisdictional review hearing, the court declined to place Steelsmith on probation, suspended his driving privileges for three years, and imposed various fines, costs, and fees. On appeal, Steelsmith asserted that the district court lacked jurisdiction to impose the fines, costs, and driver's license suspension at the jurisdictional review hearing. On appeal, this Court agreed with Steelsmith that the retention of jurisdiction under I.C. § 19-2601(4) was limited to jurisdiction for the court to suspend a sentence of imprisonment and impose terms of probation, but did not authorize the sentencing court to add fines, costs, and a driver's license suspension after the judgment of conviction had been entered. We then considered the scope of the court's authority under Idaho Criminal Rule 35(a), which authorizes a sentencing court to correct a sentence that is illegal from the face of the record at any time. We held that Rule 35(a) authorized the addition of terms to a sentence at the end of the retained jurisdiction period if those additions were necessary to correct a sentence that was otherwise illegal. *Steelsmith*, 153 Idaho at 582, 288 P.3d at 137. Relying on *Mendenhall*, we held that this authority permits a court to increase the sentence "only insofar as necessary to correct an illegality," and therefore did not authorize the suspension of *Steelsmith's* license beyond the one-year mandatory minimum term or authorize fines in excess of amounts mandated by statute. Lastly, we held that

---

[2] The Court of Appeals concluded that modifying the sentences to impose a harsher penalty upon revocation of probation violated a principle expressed by the Idaho Supreme Court in *State v. Pedraza*, 101 Idaho 440, 614 P.2d 980 (1980). The Court of Appeals thereby interpreted *Pedraza* rather expansively, for *Pedraza* did not deal with the correction of an illegal sentence. Rather, in *Pedraza*, the Supreme Court merely held that a trial court did not have authority, upon revoking probation, to simply resentence the defendant to a harsher term of imprisonment. Nevertheless, *Mendenhall* itself establishes a precedent prohibiting a court, in correcting an illegal sentence, from increasing the sentence more than would be required to correct the illegality.

9

because certain of the costs and fees added to Steelsmith's judgment at the jurisdictional review hearing did not constitute punishment for the offense and therefore were not part of the sentence, the district court was not authorized to add them by I.C.R. 35(a).

Although the foregoing lines of authority, one commencing with *Lindquist* and the other commencing with *Mendenhall*, contain broad statements that are inconsistent, we conclude that they can be reconciled when dicta is disregarded and the particular circumstances of the cases are considered. First, because neither *Money* nor *Edghill* presented the question of whether a court, in correcting an illegal sentence, may increase the sentence more than is required to cure the illegality, they are not instructive on that issue. Their general statements concerning the breadth of a sentencing court's authority in that circumstance are dicta. The remaining cases suggesting that a court called upon to correct an illegal sentence may impose any sentence that would have been lawful under the statutes in effect at the time of the offense are *Lindquist* and *Hoisington*. In each of those cases, the appellate court was considering a very specific circumstance: the trial courts had imposed fixed sentences under a statutory scheme that was not yet in effect when the crime was committed, and those courts had to correct the sentences by imposing indeterminate sentences, as mandated by the prior statutory sentencing scheme. Thus, the courts in *Lindquist* and *Hoisington* were not faced with sentences that were illegal merely because they did not comply with the minimum or maximum period of incarceration authorized for the offense or failed to implement statutory requirements that certain sentences be consecutive. Rather, in *Lindquist* and *Hoisington*, the initial sentences were illegal because the sentencing court had utilized a statutory sentencing structure that was entirely different from the sentencing structure that applied when the offenses occurred. In each case, the applicable statute called for indeterminate sentences, whereas the trial courts had initially imposed fixed sentences based upon subsequently enacted statutes. In that circumstance, it is apparent that correcting the illegality would require the sentencing court to start over and resentence the defendant with the correct statutory sentencing structure in mind. In those cases, the illegality could not be corrected by merely tinkering with the original sentences, nor could the sentencing court have imposed a correct, indeterminate sentence that would even roughly approximate the originally imposed fixed term because the two sentencing systems were so different. Because indeterminate sentences, as authorized when the offenses were committed, permitted release on parole upon service of one-third of the indeterminate term, merely converting the original fixed

10

sentences in *Lindquist* and *Hoisington* to indeterminate terms of the same duration would have vastly decreased the actual required period of imprisonment. Alternatively, imposing indeterminate terms of three times the original fixed sentence would have required the same minimum term of imprisonment but, if parole were denied, would have allowed the defendants to be confined for three times as long as the term contemplated in the original sentences. Thus, in the circumstances presented by *Lindquist* and *Hoisington*, it is easy to understand why the appellate court held that the sentencing court was authorized to correct the initial illegal sentences by imposing *any* sentence that could have been ordered under the statutes in effect when the crime occurred.

The cases comprising the "contrary" line of authority, *Mendenhall* and *Steelsmith*, presented a very different type of illegality in the original sentences and are more akin to the situation presented here. The illegality in those cases did not arise from legislative redesign of the entire sentencing structure such that the error could not be corrected without throwing out the entire original sentence and starting over. For this reason, we conclude that *Mendenhall* and *Steelsmith* are not inconsistent with *Lindquist* and *Hoisington*. Rather, broad discretion for the sentencing court to entirely disregard the original, illegal sentence and resentence the defendant to any punishment authorized by statute when the offense occurred must be limited to the circumstances presented in *Lindquist* and *Hoisington* or analogous circumstances.

In the case before us, where the illegality in Villavicencio's sentence is merely that the duration of the probation terms exceeded that allowed by statute, we conclude that the scope of the trial court's authority to correct the sentences under I.C.R. 35(a) is governed by *Mendenhall* and *Steelsmith*. That is, the district court did not possess authority pursuant to Rule 35(a) to impose *any* sentence that could have been initially imposed. Rather, the court was constrained to not increase Villavicencio's cumulative sentence except as necessary to correct the illegality. Although this limitation applied in Villavicencio's case, it did not confine the court's discretion, as the district court apparently believed, to reducing the concurrent ten-year probation terms to concurrent seven-year terms. Rather, the court possessed discretion to restructure the sentences, as the State requested, to impose two consecutive five-year terms of probation because doing so would have been compliant with the sentencing statutes and would not have increased Villavicencio's probation period above the previously imposed (illegal) ten-year concurrent terms. That is, *Mendenhall* and *Steelsmith* do not require a court that is correcting an illegal

11

sentence to impose the *least* legal sentence permissible or necessary to correct the illegality; rather, they prohibit *increasing* the sentence beyond that necessary to render the sentence legal. In this case, reformulating the probation period from two illegal concurrent ten-year terms into two consecutive terms aggregating to ten years would correct the illegality without increasing Villavicencio's sentence and would have effectuated the plea agreement.

When a trial court's discretionary decision is reviewed on appeal, the appellate court must determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). In this case, the district court believed that it could amend the sentences only by reducing them to the maximum term allowed by statute and therefore could not amend them to conform to the plea agreement by imposing consecutive terms of probation that would aggregate to ten years. Because the district court did not recognize the scope of its discretion when addressing Villavicencio's Rule 35(a) motion, we remand to allow the district court to reconsider the motion to correct the illegal sentences with knowledge of the full scope of its discretion.

### III.

### CONCLUSION

The district court here possessed subject matter jurisdiction to correct Villavicencio's illegal sentences pursuant to I.C.R. 35(a), but when the district court amended the probation terms to correct the illegality, it did not recognize the scope of its discretion. Accordingly, we vacate the amended judgment and remand for further proceedings consistent with this opinion.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.